*428 The opinion of the Court was delivered by
Dunkin, C. J.
It is stated in the decree that the testator died soon after the execution of his will,. 26th March, 1862. By the third clause of that instrument he devises and bequeaths all the rest and residue of his estate, real and personal, to be equally divided between his ten children by name, and he adds ; “I further will and devise that those of my children who have received property from me previous to the execution of this instrument will account to my estate for so much.”
This Court concurs with the Chancellor in the construction of this clause of the testator’s will. The Act of 1791 does not apply to a case of testacy, and the gifts of negroes (as insisted on in the appellants’ first ground) may not be technically advancements. But the testator has made the law of his own property, and it is difficult to distinguish the effect of the language he has adopted in providing for its distribution from that chosen by the Legislature. In both, the period for fixing the rights of the parties is the death of the decedent. The value of the property to be divided is to be estimated as of that day, and so of the property which had been given off'to the children, taking that property in the plight and condition it was when received by the children. In March or April, 1862, slaves had their usual value, and those in the possession of the testator at the time of his death have been estimated by the Commissioner, as well as those which had been received previously by the several legatees, and there is no dissatisfaction with the valuation.
But we are constrained to differ from the Chancellor, when he declares that the negroes left by the testator are not “ to. be included or regarded in the distribution of his estate, because since ;his death they have ceased to be property and in this respect we regard the third ground of appeal as well taken. “ The true intention of the law,” say the Court in McCaw vs. Blewett, 2 McC. Ch. 90, in commenting on the *429 Act of 1791, is, “that the estate of the ancestor is to be considered as a common fund, out of which each child is to draw at the death an equal proportion. That part of the estate which has been given is to be estimated at what it is worth at the death, relation being had to the situation at the time of the gift.” “ The rights of the parties are fixed at the death of the ancestor.” Such was also the purpose of this testator in directing the distribution of his estate. The rights of the several beneficiaries were fixed at his death. No delay on the part of the executors in making the division, from whatever cause such delay may have arisen, no subsequent revolution in the affairs of the country, can affect the principle of distribution, or vary the relative rights of the parties as they existed in April, 1862, when the will took effect. It will therefore be necessary, in estimating the value of the testator’s estate at the time of his death, that the Commissioner should take into the computation the value of the forty-five negroes left by him, and which were included in the inventory made by the executors. In this particular, the decree of the Circuit Court is reversed, and the decretal order of reference modified accordingly. In all other respects the decree is affirmed.
"Wardlaw and Inglis, J. J., concurred.

Decree modified.